# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN K.,[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 21-1172-JWL |
| KILOLO KIJAKAZI,[2] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I.      Background**

Plaintiff protectively filed applications for DIB and SSI benefits on July 10, 2019. (R. 12, 203). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims "[t]he ALJ violated SSR [(Soc. Sec. Ruling)] 16-3p by failing to provide any meaningful assessment of [Plaintiff]'s allegations." (Pl. Br. 7).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.     Discussion

Plaintiff points out that he "consistently reported problems with isolation and a limited ability to leave his home or simply [to] be in the vicinity of others."  (Pl. Br. 7-8).  He argues the ALJ failed "to give any specific reasons supported by the evidence for discounting [Plaintiff]'s allegations" but also noted that he had not been hospitalized within the previous twelve months.  Id. at 9.  He argues this is an improper reason to discount his allegations of disability and "[e]ven the listings [for anxiety and depression] do not require hospitalization to be found disabled."  Id.

Plaintiff quotes the ALJ's findings that the evidence indicates Plaintiff's "symptoms may not be accurately reported, may not exist at the level of severity assumed by the claimant's testimony at hearing and may have other mitigating factors against their negative impact on the claimant's ability to engage in work activity." (Pl. Br. 9-10) (quoting R. 19). He argues the ALJ cited no evidence to closely and affirmatively link her findings to substantial evidence as required by Wilson, 602 F.3d at 1144 and SSR 16-3p, 2016 WL 1119029 at *9 (an ALJ may not make a single conclusory statement indicating that a claimant's allegations of symptoms had been considered). (Pl. Br. 10). He argues, "the remainder of the ALJ's decision provided no further clarification as to why the ALJ found [Plaintiff's] allegations unsupported," and the ALJ "did not summarize medical evidence in the RFC assessment" although "she referenced some treatment notes in the Psychiatric Review Technique [at step three of the sequential evaluation process] and in her assessment of the medical opinions." Id. Plaintiff points to record evidence supporting his allegations of symptoms, id. at 11-12, and argues that in alluding to noncompliance with treatment, the ALJ mischaracterized the record and erred in failing to apply the Frey test. Id. 12-14 (citing Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987)).

The Commissioner argues substantial record evidence supports the ALJ's evaluation of Plaintiff's allegation of symptoms and Plaintiff's arguments merely ask the court to reweigh the evidence and interpret it in his favor. (Comm'r Br. 6). She points to record evidence which in her view supports the ALJ's decision. Id. 7-10.

In his Reply Brief Plaintiff reiterates his arguments. He argues the ALJ "did not explain or provide any support for the implied conclusion that [Plaintiff] would have no limitation for the need to isolate." (Reply 1). He argues that the Commissioner's Brief "implies that the articulation requirements of SSR 16-3p do not exist." Id. 2 (citing Jamie N. v. Saul, Civ. A. No. 20-1164-JWL, 2021 WL 2454427, at *2 (D. Kan. June 16, 2021); and A.B. v. Saul, No. 20-1114-SAC, 2020 WL 7714408, at *3 (D. Kan. Dec. 29, 2020)). He argues the Commissioner's citation to record evidence supporting the ALJ's position "constituted no more than post hoc rationalization further highlighting the ALJ's deficiencies." Id. 3.

### A. Standard for Evaluating a Claimant's Allegation of Symptoms

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R. § 404.1529(c)(3).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[3]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage,

---

[3] Luna, Thompson, and Kepler were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination."  Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404.1529, 416/929).  Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. Appx. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. §§ 404.1529, 416.929 (2017) is still the proper standard to be used as explained in the regulations in effect on December 17, 2020, when this case was decided.  Nonetheless, to the extent, and only to the extent that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures a claimant has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

### B.     The ALJ's Relevant Findings

The ALJ found that Plaintiff has both physical and mental impairments but the only impairments she found are severe within the meaning of the Act are generalized anxiety disorder and major depressive disorder.  (R. 14).  In her step three evaluation, the ALJ considered and discussed Plaintiff's limitations in the four broad areas of mental functioning (the paragraph B criteria) and determined his condition does not meet or medically equal the criteria of Listing 12.04, depressive, bipolar, and related disorders; or Listing 12.06, anxiety, and obsessive-compulsive disorders.  (R. 15-17).  She found Plaintiff has mild limitations in understanding, remembering, and applying information, and moderate limitations in the other three areas; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  Id.  She also considered and determined the paragraph C criteria are not met.  Id. at 17.

The ALJ stated that she had applied 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p and determined Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  Id. 17-18.  The ALJ recognized Plaintiff has severe mental impairments as recognized in her step two finding and that the impairments cause functional limitations but "there is no

8

evidence of marked or extreme limitations within any domain." (R. 19). She found limitations on social functioning are appropriate but Plaintiff is able to perform work. Id. She concluded the evidence indicates Plaintiff's "symptoms may not be accurately reported, may not exist at the level of severity assumed by the claimant's testimony at hearing and may have other mitigating factors against their negative impact on the claimant's ability to engage in work activity." Id.

The ALJ also explained how persuasive she found the opinions and prior administrative medical findings of the mental healthcare specialists in the record. Id. She found the psychological consultants' opinions persuasive because the record showed Plaintiff had intact cognitive functioning, the opinions are consistent with the record evidence and Plaintiff "was able to testify at the hearing in a clear manner." Id. She found Dr. Wunderlich's opinion "is generally persuasive, however, the examiner's opinion regarding the claimant's social functioning is not consistent with his own observations. Dr. Wunderlich noted that the claimant was able to exhibit good communication during the consultative examination." Id. She found the opinion of Plaintiff's physician's assistant, Ms. Harris,

> is not persuasive because the opinion is not consistent with treatment notes. The evidence reveals that the claimant reported that he is able to get out of his home, together with overall improvements in the claimant's social functioning. Moreover, the notes disclose that the claimant reported that he found his medication to be helpful in alleviating his symptoms.

Id.

The ALJ found Plaintiff has only mental limitations. Plaintiff

9

>   can sustain concentration, persistence, and pace on simple work tasks. He
>   should not interact with the public. He can have occasional interaction with
>   coworkers and supervisors, regarding work matters only. Work duties
>   should be familiar to this individual with little fluctuation. Moreover, work
>   place changes should be introduced gradually.

(R. 17) (finding no. 5, bold omitted).

### C.     Analysis

Plaintiff has shown no error in the ALJ's evaluation of his allegations of symptoms. The court finds several problems with regard to Plaintiff's claim the ALJ impliedly concluded Plaintiff has no limitations from his alleged need to isolate. First, Plaintiff does not <u>isolate</u>, he lives with his wife, he goes out with his brother when his brother coaxes him (R. 36), and he goes to medical and mental health treatment appointments. Moreover, the ALJ noted that Plaintiff "appeared increasingly comfortable during the examination and visit" with his treatment provider, "there is no evidence of significant behavioral issues between the claimant and his treatment providers," and "Dr. Wunderlich noted that the claimant appeared open and cooperative." (R. 16.) (citing R. 440, 507). Second, and perhaps most importantly, the ALJ assessed limitations on Plaintiff's ability to interact; he was to have no interaction with the public and only occasional interaction with coworkers and supervisors and that only regarding work matters. (R. 17) (finding no. 5).

Plaintiff's complaint that the ALJ's comment regarding no hospitalization in the last twelve months is an improper basis to discount his allegations of symptoms fails because he has not shown the ALJ used that to discount his allegations. The comment comes at the end of an eleven-sentence paragraph in which the ALJ summarized

10

Plaintiff's allegations of disabling symptoms. After listing Plaintiff's allegations in ten sentences, the ALJ concluded, "On the other hand, the claimant testified that he has not experienced a hospitalization due to his symptoms within the previous 12-month period." (R. 18) (last full paragraph). While it is clear the ALJ considered Plaintiff had not been hospitalized due to symptoms during the twelve months before the hearing, there is no other mention of hospitalization in the decision and she did not state she relied on that fact to discount Plaintiff's allegations. Rather, it was but one of numerous facts she considered, as she is required, in evaluating Plaintiff's allegations.

Plaintiff's argument the ALJ cited no evidence closely and affirmatively linking her findings to substantial evidence also fails. Plaintiff acknowledges the ALJ cited treatment notes in her step three discussion and in evaluating the persuasiveness of the medical opinions but argues she "did not summarize medical evidence in the RFC assessment" suggesting that evidence discounting a claimant's allegations of symptoms must be repeated during the ALJ's discussion of her RFC assessment even though it has been summarized elsewhere in the decision. (Pl. Br. 10). The ALJ explained she found Plaintiff's allegations not consistent with the record "for the reasons explained in this decision." Therefore, the entire decision must be considered to determine the reasons the ALJ relied upon to discount Plaintiff's allegations. Moreover, as noted above Plaintiff's only severe impairments are mental impairments and it is not surprising that the ALJ's primary discussion of and citation to record evidence of those impairments appears in her application of and discussion of the Commissioner's Psychological Review Technique at steps two and three of the sequential evaluation process.

11

In her step three discussion, the ALJ made the following findings tending to be inconsistent with Plaintiff's allegations of disabling mental symptoms. In understanding, remembering, and applying information, the ALJ noted Plaintiff alleged he needs reminders for personal care and grooming and to take medicine but his treatment provider noted he "exhibited intact abilities in recent memory." (R. 15-16). Dr. Rouphael noted Plaintiff "exhibited intact recent memory and good cognitive function." Id. at 16. In interacting with others, Plaintiff's treatment provider noted he exhibited an anxious and depressed mood but on the other hand noted his "mood brightened with interaction," and "he appeared increasingly comfortable during the examination and visit." Id. "Dr. Wunderlich noted that the claimant appeared open and cooperative." Id. In concentrating, persisting, or maintaining pace, the ALJ found his provider noted he

> exhibited good and intact abilities in attention and concentration. Dr. Rouphael noted that the claimant appeared alert and oriented. Dr. Wunderlich noted that the claimant was able to complete successfully a delayed recall exercise, … to complete simple mathematical calculations, [and] to interpret appropriately proverbs.

Id. (citations omitted). In adapting or managing oneself the ALJ found Plaintiff "reported that, when he complies, his prescribed medications are helpful in alleviating his symptoms," Plaintiff reported a history of substance abuse but now maintains sobriety, that he is able to perform personal care but lacks motivation, and has a history of suicidal ideation, but "his prescribed medication alleviates those symptoms." Id. at 16-17.

The evidence and explanation cited in the decision supports the ALJ's findings. In the decision the ALJ also cited evidence supporting Plaintiff's allegations and found that he has limitations in all four broad mental functional areas, mild in the area of

understanding, remembering, or applying information, but moderate in the other areas. With the exception of compliance with medication, Plaintiff does not argue that evidence is contrary to the ALJ's findings. As Plaintiff suggests, when she stated Plaintiff "reported that, when he complies, his prescribed medications are helpful in alleviating his symptoms," the ALJ left open the possibilities that Plaintiff did not comply with his medication prescriptions, that Plaintiff admitted he did not always comply with his prescriptions, and/or that Plaintiff's provider believed Plaintiff was not always compliant. As Plaintiff argues the record cited does not support any of those possibilities as it merely states that Plaintiff, "[f]eels that medications are helpful." (R. 521). However, the ALJ says nothing else about compliance with treatment. A fair reading of the decision reveals that the ALJ was not relying on a failure to comply with treatment to discount Plaintiff's allegations of symptoms but was relying on the fact that his medication was helpful to demonstrate his symptoms were not as severe as he alleged. Moreover, even if the ALJ had relied on a failure to comply with treatment the Frey test would not be applicable here because the ALJ did not find Plaintiff "is otherwise entitled to disability … benefits. SSR 18-3p, 2018 WL 4945641, *2 (SSA Oct. 2, 2018).

Plaintiff's appeal to other record evidence to support his allegations does not require a different outcome. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax v. Astrue, 489 F.3d 1080,

1084 (10th Cir. 2007) (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  As noted above, in order to show error in the ALJ's finding of facts Plaintiff must show evidence that compels a different finding and he has not done so here.

Plaintiff's claim that the Commissioner's summary of record evidence in support of discounting Plaintiff's allegations is merely post-hoc rationalization misunderstands that term.  The court must identify the rationale presented in the decision for the finding at issue.  If the Commissioner points to record evidence supporting that rationale, even if that evidence was not specifically mentioned in the final decision, that is proper argument in support of the final decision.  However, if the Commissioner points to record evidence (even evidence which was discussed in the decision) and attempts to provide an alternative rationale in support of the decision, that alternative rationale is merely post-hoc rationalization which may not be relied upon by the court to affirm the decision.  Buchan v. Astrue, Civ. A. No. 10-4081-JWL, 2011 WL 3714472, *4-5 (D. Kan. Aug. 24, 2011).  Here, the ALJ discounted Plaintiff's allegations because she found them inconsistent with the medical evidence and other evidence in the record.  (R. 18).  Therefore, it is not post-hoc rationalization for the Commissioner or the court to cite record evidence inconsistent with Plaintiff's allegations even if that particular evidence was not cited by the ALJ.  The decision-maker's responsibility is to state the reasons for her decision, not to cite every piece of record evidence supporting that decision.

The ALJ here articulated the evidence she found inconsistent with Plaintiff's allegations of disabling symptoms, she did not merely cite evidence and draft a

conclusory statement that Plaintiff's allegations were inconsistent with the record evidence. Consequently, Plaintiff's appeal to the cases of Jamie N. and A. B. is unavailing.

Plaintiff has shown no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated July 6, 2022, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**